FILED

2015 FEB 18  PM 3: 43

CLERK U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.
LOS ANGELES

BY:_____

1  STEPHANIE YONEKURA
   Acting United States Attorney
2  ROBERT E. DUGDALE
   Assistant United States Attorney
3  Chief, Criminal Division
   JAMES A. BOWMAN (Cal. Bar No. 220227)
4  Assistant United States Attorney
   Deputy Chief, Major Frauds Section
5  CHRISTOPHER K. PELHAM (Cal. Bar No. 241068)
   Assistant United States Attorney
6       1100 United States Courthouse
        312 North Spring Street
7       Los Angeles, California 90012
        Telephone: (213) 894-2213/0610
8       Facsimile: (213) 894-6269
        E-mail: james.bowman@usdoj.gov
9               christopher.pelham@usdoj.gov

10 Attorneys for Plaintiff
   UNITED STATES OF AMERICA

11

12              UNITED STATES DISTRICT COURT

13          FOR THE CENTRAL DISTRICT OF CALIFORNIA

14 UNITED STATES OF AMERICA,          No. CR 13-48(B)-SVW

15          Plaintiff,

16          v.                         PLEA AGREEMENT FOR DEFENDANT
                                       GROVER HENRY COLIN NIX, IV
17 GROVER HENRY COLIN NIX, IV,
     aka "Colin Nix,"

18
            Defendant.
19

20      1.   This constitutes the plea agreement between GROVER HENRY

21 COLIN NIX, IV, aka "Colin Nix" ("defendant"), and the United States

22 Attorney's Office for the Central District of California (the

23 "USAO") in the above-captioned case.  This agreement is limited to

24 the USAO and cannot bind any other federal, state, local, or foreign

25 prosecuting, enforcement, administrative, or regulatory authorities.

26 //

27 //

28

                              1

DEFENDANT'S OBLIGATIONS

2.    Defendant agrees to:

a)    At the earliest opportunity requested by the USAO and provided by the Court, appear and plead guilty to Count One of the Superseding Information in the above-captioned case (in substantially the same form as the Superseding Information attached as Exhibit A hereto), which charges defendant with conspiracy to commit securities fraud, in violation of Title 18, United States Code, Section 371.

b)    Not contest facts agreed to in this agreement.

c)    Abide by all agreements regarding sentencing contained in this agreement.

d)    Appear for all court appearances, surrender as ordered for service of sentence, obey all conditions of any bond, and obey any other ongoing court order in this matter.

e)    Not commit any crime; however, offenses that would be excluded for sentencing purposes under United States Sentencing Guidelines ("U.S.S.G." or "Sentencing Guidelines") § 4A1.2(c) are not within the scope of this agreement.

f)    Be truthful at all times with Pretrial Services, the United States Probation Office, and the Court.

g)    Pay the applicable special assessment at or before the time of sentencing unless defendant lacks the ability to pay and prior to sentencing submits a completed financial statement on a form to be provided by the USAO.

h)    Not seek the discharge of any restitution obligation, in whole or in part, in any present or future bankruptcy proceeding.

THE USAO'S OBLIGATIONS

3.    The USAO agrees to:

     a)    Not contest facts agreed to in this agreement.

     b)    Abide by all agreements regarding sentencing contained in this agreement.

     c)    At the time of sentencing, move to dismiss the underlying Indictment in <u>United States v. Regis Possino, et al.,</u> Case No. CR 13-48-SVW, as against defendant.  Defendant agrees, however, that at the time of sentencing the Court may consider any dismissed charges in determining the applicable Sentencing Guidelines range, the propriety and extent of any departure from that range, and the sentence to be imposed.

     d)    At the time of sentencing, provided that defendant demonstrates an acceptance of responsibility for the offense up to and including the time of sentencing, recommend a two-level reduction in the applicable Sentencing Guidelines offense level, pursuant to U.S.S.G. § 3E1.1, and recommend and, if necessary, move for an additional one-level reduction if available under that section.

NATURE OF THE OFFENSE

4.    Defendant understands that for defendant to be guilty of the crime charged in count one, that is, conspiracy to commit securities fraud, in violation of Title 18, United States Code, Section 371, the following must be true:

     a) Beginning no later than in or about June 2009, and continuing through in or about December 2010, there was an agreement between two or more persons to commit the crime of securities fraud

3

1  in violation of Title 15, United States Code, Sections 78j(b), and

2  78ff, and Title 17, Code of Federal Regulations, Section 240.10b-5;

3         b) The defendant became a member of the conspiracy knowing

4  of at least one of its objects and intending to help accomplish it;

5  and

6         c) One of the members of the conspiracy performed at least

7  one overt act for the purpose of carrying out the conspiracy.

8      5.   Defendant further understands that the elements of

9  securities fraud in violation of Title 15, United States Code,

10 Sections 78j(b), and 78ff, and Title 17, Code of Federal

11 Regulations, Section 240.10b-5, are as follows:

12        a)   Defendant willfully (i) used a device or scheme to

13 defraud someone, (ii) made an untrue statement of a material fact or

14 failed to disclose a material fact that made defendant's statements

15 misleading, or (iii) engaged in any act, practice, or course of

16 business that operated or would have operated as a fraud or deceit

17 upon any person;

18        b)   Defendant's acts or failure to disclose were done in

19 connection with the purchase or sale of certain securities;

20        c)   Defendant directly or indirectly used an

21 instrumentality of interstate commerce, the mails, or a national

22 securities exchange in connection with these acts or failure to

23 disclose; and

24        d)   Defendant acted knowingly.

25                    PENALTIES AND RESTITUTION

26     6.   Defendant understands that the statutory maximum sentence

27 that the Court can impose for a violation of Title 18, United States

28 Code, Section 371, is: five years imprisonment; a three-year period

4

1  of supervised release; a fine of $250,000 or twice the gross gain or
2  gross loss resulting from the offense, whichever is greatest; and a
3  mandatory special assessment of $100.

4      7.   Defendant agrees to make full restitution to the victims
5  of the offense to which defendant is pleading guilty.  The parties
6  currently believe that the applicable amount of restitution is
7  approximately $1,046,000, but recognize and agree that this amount
8  could change based on facts that come to the attention of the
9  parties prior to sentencing.

10     8.   Defendant understands that supervised release is a period
11 of time following imprisonment during which defendant will be
12 subject to various restrictions and requirements.  Defendant
13 understands that if defendant violates one or more of the conditions
14 of any supervised release imposed, defendant may be returned to
15 prison for all or part of the term of supervised release authorized
16 by statute for the offense that resulted in the term of supervised
17 release, which could result in defendant serving a total term of
18 imprisonment greater than the statutory maximum stated above.

19     9.   Defendant understands that, by pleading guilty, defendant
20 may be giving up valuable government benefits and valuable civic
21 rights, such as the right to vote, the right to possess a firearm,
22 the right to hold office, and the right to serve on a jury.
23 Defendant understands that once the court accepts defendant's guilty
24 plea, it will be a federal felony for defendant to possess a firearm
25 or ammunition.  Defendant understands that the conviction in this
26 case may also subject defendant to various other collateral
27 consequences, including but not limited to revocation of probation,
28 parole, or supervised release in another case and suspension or

revocation of a professional license.  Defendant understands that unanticipated collateral consequences will not serve as grounds to withdraw defendant's guilty plea.

10.  Defendant understands that, if defendant is not a United States citizen, the felony conviction in this case may subject defendant to: removal, also known as deportation, which may, under some circumstances, be mandatory; denial of citizenship; and denial of admission to the United States in the future.  The Court cannot, and defendant's attorney also may not be able to, advise defendant fully regarding the immigration consequences of the felony conviction in this case.  Defendant understands that unexpected immigration consequences will not serve as grounds to withdraw defendant's guilty plea.

FACTUAL BASIS

11.  Defendant admits that defendant is, in fact, guilty of the offense to which defendant is agreeing to plead guilty.  Defendant and the USAO agree to the statement of facts provided in Exhibit B to this agreement and agree that this statement of facts is sufficient to support plea of guilty to the charge described in this agreement and to establish the Sentencing Guidelines factors set forth in paragraph 13 below, but is not meant to be a complete recitation of all facts relevant to the underlying criminal conduct or all facts known to either party that relate to that conduct.

SENTENCING FACTORS

12.  Defendant understands that in determining defendant's sentence the Court is required to calculate the applicable Sentencing Guidelines range and to consider that range, possible departures under the Sentencing Guidelines, and the other sentencing

factors set forth in 18 U.S.C. § 3553(a).  Defendant understands

that the Sentencing Guidelines are advisory only, that defendant

cannot have any expectation of receiving a sentence within the

calculated Sentencing Guidelines range, and that after considering

the Sentencing Guidelines and the other § 3553(a) factors, the Court

will be free to exercise its discretion to impose any sentence it

finds appropriate up to the maximum set by statute for the crimes of

conviction.

13.  Defendant and the USAO agree to the following applicable

Sentencing Guidelines factors:

| Base Offense Level | : | 7 | USSG §§ 2X1.1, 2B1.1(a)(1) |
|---|---|---|---|
| Loss More than $1 million: | | +16 | USSG § 2B1.1(b)(1)(I) |
| More than 250 victims | : | +6 | USSG § 2B1.1(b)(2)(A) |
| Sophisticated Means | : | +2 | USSG § 2B1.1(b)(10)(C) |
| Role in the Offense | : | +4 | USSG § 3B1.1(a) |

The USAO will agree to a two-level downward adjustment for

acceptance of responsibility (and, if applicable, move for an

additional one-level downward adjustment under U.S.S.G. § 3E1.1(b))

only if the conditions set forth in paragraph 2 and 3 are met.  The

USAO also reserves the right to seek an additional two level

enhancement for obstruction of justice pursuant to U.S.S.G. § 3C1.1.

Subject to paragraph 27, defendant and the USAO agree not to seek,

argue, or suggest in any way, either orally or in writing, that any

other specific offense characteristics, adjustments, or departures

relating to the offense level be imposed.

14.  Defendant understands that there is no agreement as to

defendant's criminal history or criminal history category.

7

15.  The parties agree that, taking into account the relevant factors provided in 18 U.S.C. § 3553(a), a prison sentence of 60 months is a reasonable and appropriate sentence for defendant in this case.  Defendant and the USAO agree not to argue, either orally or in writing, that the Court impose a term of imprisonment other than 60 months in this case.

## WAIVER OF CONSTITUTIONAL RIGHTS

16.  Defendant understands that by pleading guilty, defendant gives up the following rights:

a)   The right to persist in a plea of not guilty.

b)   The right to a speedy and public trial by jury.

c)   The right to be represented by counsel — and if necessary have the court appoint counsel — at trial.  Defendant understands, however, that, defendant retains the right to be represented by counsel — and if necessary have the court appoint counsel — at every other stage of the proceeding.

d)   The right to be presumed innocent and to have the burden of proof placed on the government to prove defendant guilty beyond a reasonable doubt.

e)   The right to confront and cross-examine witnesses against defendant.

f)   The right to testify and to present evidence in opposition to the charges, including the right to compel the attendance of witnesses to testify.

g)   The right not to be compelled to testify, and, if defendant chose not to testify or present evidence, to have that choice not be used against defendant.

h)    Any and all rights to pursue any affirmative

defenses, Fourth Amendment or Fifth Amendment claims, and other

pretrial motions that have been filed or could be filed.

17.   The USAO previously notified defendant and the Court that

it would treat the wiretaps in this case as if the motions to

suppress those wiretaps had been granted.   The USAO also produced to

defendant the materials which led to its decision to self-suppress

the wiretaps.   Defendant and his counsel have reviewed and discussed

these materials.   Defendant understands that by pleading guilty,

defendant gives up any and all rights to bring any motion that could

be brought based, in whole or in part, on the suppression of the

wiretaps, the materials which led to the USAO's decision to suppress

the wiretaps, any defenses that could be raised in connection with

the suppression of the wiretaps and the produced materials, and any

challenges or motions that could be raised against the remaining

evidence in the case.

### WAIVER OF APPEAL OF CONVICTION

18.   Defendant understands that, with the exception of an

appeal based on a claim that defendant's guilty plea was

involuntary, by pleading guilty defendant is waiving and giving up

any right to appeal defendant's conviction on the offense to which

defendant is pleading guilty.

### LIMITED MUTUAL WAIVER OF APPEAL OF SENTENCE AND COLLATERAL ATTACK

19.   Defendant agrees that defendant gives up the right to

appeal all of the following: (a) the procedures and calculations

used to determine and impose any portion of the sentence; (b) the

term of imprisonment imposed by the Court, so long as it is within

the statutory maximum; (c) the fine imposed by the Court, provided

1  it is within the statutory maximum; (d) the term of probation or

2  supervised release imposed by the Court, provided it is within the

3  statutory maximum; and (e) any of the following conditions of

4  probation or supervised release imposed by the Court: the conditions

5  set forth in General Orders 318, 01-05, and/or 05-02 of this Court;

6  the drug testing conditions mandated by 18 U.S.C. §§ 3563(a)(5) and

7  3583(d); and the alcohol and drug use conditions authorized by 18

8  U.S.C. § 3563(b)(7).

9      20.  The USAO agrees that, provided (a) all portions of the

10 sentence are at or below the statutory maximum specified above, the

11 USAO gives up its right to appeal any portion of the sentence.

RESULT OF WITHDRAWAL OF GUILTY PLEA

13     21.  Defendant agrees that if, after entering a guilty plea

14 pursuant to this agreement, defendant seeks to withdraw and succeeds

15 in withdrawing defendant's guilty plea on any basis other than a

16 claim and finding that entry into this plea agreement was

17 involuntary, then (a) the USAO will be relieved of all of its

18 obligations under this agreement; and (b) should the USAO choose to

19 pursue any charge that was either dismissed or not filed as a result

20 of this agreement, then (i) any applicable statute of limitations

21 will be tolled between the date of defendant's signing of this

22 agreement and the filing commencing any such action; and

23 (ii) defendant waives and gives up all defenses based on the statute

24 of limitations, any claim of pre-indictment delay, or any speedy

25 trial claim with respect to any such action, except to the extent

26 that such defenses existed as of the date of defendant's signing

27 this agreement.

28

10

1  RESULT OF VACATUR, REVERSAL OR SET-ASIDE

2      22.  Defendant agrees that if the count of conviction is

3  vacated, reversed, or set aside, both the USAO and defendant will be

4  released from all their obligations under this agreement.

5  EFFECTIVE DATE OF AGREEMENT

6      23.  This agreement is effective upon signature and execution

7  of all required certifications by defendant, defendant's counsel,

8  and an Assistant United States Attorney.

9  BREACH OF AGREEMENT

10     24.  Defendant agrees that if defendant, at any time after the

11 signature of this agreement and execution of all required

12 certifications by defendant, defendant's counsel, and an Assistant

13 United States Attorney, knowingly violates or fails to perform any

14 of defendant's obligations under this agreement ("a breach"), the

15 USAO may declare this agreement breached.  All of defendant's

16 obligations are material, a single breach of this agreement is

17 sufficient for the USAO to declare a breach, and defendant shall not

18 be deemed to have cured a breach without the express agreement of

19 the USAO in writing.  If the USAO declares this agreement breached,

20 and the Court finds such a breach to have occurred, then:

21         a)   If defendant has previously entered guilty plea

22 pursuant to this agreement, defendant will not be able to withdraw

23 the guilty plea; and

24         b)   The USAO will be relieved of all its obligations

25 under this agreement; in particular, the USAO: (i) will no longer be

26 bound by any agreements concerning sentencing; and (ii) will no

27 longer be bound by any agreements regarding criminal prosecution,

28 and will be free to criminally prosecute defendant for any crime,

1   including charges that the USAO would otherwise have been obligated

2   to dismiss pursuant to this agreement.

3       25.  Following the Court's finding of a knowing breach of this

4   agreement by defendant, should the USAO choose to pursue any charge

5   that was either dismissed or not filed as a result of this

6   agreement, then:

7           a)   Defendant agrees that any applicable statute of

8   limitations is tolled between the date of defendant's signing of

9   this agreement and the filing commencing any such action.

10          b)   Defendant waives and gives up all defenses based on

11  the statute of limitations, any claim of pre-indictment delay, or

12  any speedy trial claim with respect to any such action, except to

13  the extent that such defenses existed as of the date of defendant's

14  signing this agreement.

15          c)   Defendant agrees that: (i) any statements made by

16  defendant, under oath, at the guilty plea hearing (if such a hearing

17  occurred prior to the breach); (ii) the agreed to factual basis

18  statement in this agreement; and (iii) any evidence derived from

19  such statements, shall be admissible against defendant in any such

20  action against defendant, and defendant waives and gives up any

21  claim under the United States Constitution, any statute, Rule 410 of

22  the Federal Rules of Evidence, Rule 11(f) of the Federal Rules of

23  Criminal Procedure, or any other federal rule, that the statements

24  or any evidence derived from the statements should be suppressed or

25  are inadmissible.

26                  COURT AND PROBATION OFFICE NOT PARTIES

27      26.  Defendant understands that the Court and the United States

28  Probation Office are not parties to this agreement and need not

accept any of the USAO's sentencing recommendations or the parties' agreements to facts or sentencing factors.

27. Defendant understands that both defendant and the USAO are free to: (a) supplement the facts by supplying relevant information to the United States Probation Office and the Court, (b) correct any and all factual misstatements relating to the Court's Sentencing Guidelines calculations and determination of sentence, and (c) argue on appeal and collateral review that the Court's Sentencing Guidelines calculations and the sentence it chooses to impose are not error, although each party agrees to maintain its view that the calculations in paragraph 13 are consistent with the facts of this case. While this paragraph permits both the USAO and defendant to submit full and complete factual information to the United States Probation Office and the Court, even if that factual information may be viewed as inconsistent with the facts agreed to in this agreement, this paragraph does not affect defendant's and the USAO's obligations not to contest the facts agreed to in this agreement.

28. Defendant understands that even if the Court ignores any sentencing recommendation, finds facts or reaches conclusions different from those agreed to, and/or imposes any sentence up to the maximum established by statute, defendant cannot, for that reason, withdraw defendant's guilty plea, and defendant will remain bound to fulfill all defendant's obligations under this agreement. Defendant understands that no one -- not the prosecutor, defendant's attorney, or the Court -- can make a binding prediction or promise regarding the sentence defendant will receive, except that it will be within the statutory maximum.

NO ADDITIONAL AGREEMENTS

29.  Defendant understands that, except as set forth herein, there are no promises, understandings, or agreements between the USAO and defendant or defendant's attorney, and that no additional promise, understanding, or agreement may be entered into unless in a writing signed by all parties or on the record in court.

PLEA AGREEMENT PART OF THE GUILTY PLEA HEARING

30.  The parties agree that this agreement will be considered part of the record of defendant's guilty plea hearing as if the entire agreement had been read into the record of the proceeding.

AGREED AND ACCEPTED

UNITED STATES ATTORNEY'S OFFICE
FOR THE CENTRAL DISTRICT OF CALIFORNIA

STEPHANIE YONEKURA
Acting United States Attorney


JAMES A. BOWMAN                          Date  2/15/15
CHRISTOPHER K. PELHAM
Assistant United States Attorneys


GROVER HENRY COLIN NIX, IV               Date  2/13/15
Defendant


EDWARD ROBINSON, ESQ.                    Date
Attorney for Defendant
GROVER HENRY COLIN NIX, IV

14

## NO ADDITIONAL AGREEMENTS

29. Defendant understands that, except as set forth herein, there are no promises, understandings, or agreements between the USAO and defendant or defendant's attorney, and that no additional promise, understanding, or agreement may be entered into unless in a writing signed by all parties or on the record in court.

## PLEA AGREEMENT PART OF THE GUILTY PLEA HEARING

30. The parties agree that this agreement will be considered part of the record of defendant's guilty plea hearing as if the entire agreement had been read into the record of the proceeding.

AGREED AND ACCEPTED

UNITED STATES ATTORNEY'S OFFICE
FOR THE CENTRAL DISTRICT OF CALIFORNIA

STEPHANIE YONEKURA
Acting United States Attorney


_____          _____
JAMES A. BOWMAN                            Date
CHRISTOPHER K. PELHAM
Assistant United States Attorneys


_____          _____
GROVER HENRY COLIN NIX, IV                 Date
Defendant
                                           2/16/15

_____          _____
EDWARD ROBINSON, ESQ.                      Date
Attorney for Defendant
GROVER HENRY COLIN NIX, IV

14

1                    CERTIFICATION OF DEFENDANT

2        I have read this agreement in its entirety.  I have had enough

3   time to review and consider this agreement, and I have carefully and

4   thoroughly discussed every part of it with my attorney.  I

5   understand the terms of this agreement, and I voluntarily agree to

6   those terms.  I have discussed the evidence with my attorney, and my

7   attorney has advised me of my rights, of possible pretrial motions

8   that might be filed, of possible defenses that might be asserted

9   either prior to or at trial, of the sentencing factors set forth in

10  18 U.S.C. § 3553(a), of relevant Sentencing Guidelines provisions,

11  and of the consequences of entering into this agreement.  I am also

12  aware that the USAO is treating the prior wiretaps and wiretap

13  evidence as if the motions to suppress those wiretaps had been

14  granted.  The USAO has also produced the materials which led to its

15  decision to suppress the wiretaps and I have reviewed those

16  materials and discussed them with my attorney.  My attorney has

17  advised me of possible motions that could be filed related to the

18  suppression of the wiretaps and the materials produced by the USAO,

19  of possible defenses that could be raised in connection with the

20  suppression of the wiretaps and the produced materials, and the

21  challenges that could be raised to the remaining evidence in the

22  case.  No promises, inducements, or representations of any kind have

23  been made to me other than those contained in this agreement.  No

24  one has threatened or forced me in any way to enter into this

25  agreement.  I am satisfied with the representation of my attorney in

26  this matter, and I am pleading guilty because I am guilty of the

27  ///

28

                                   15

charges and wish to take advantage of the promises set forth in this

agreement, and not for any other reason.

_____     2/13/15
GROVER HENRY COLIN NIX, IV      Date
Defendant

CERTIFICATION OF DEFENDANT'S ATTORNEY

I am GROVER HENRY COLIN NIX IV's attorney. I have carefully and thoroughly discussed every part of this agreement with my client. Further, I have fully advised my client of his rights, of possible pretrial motions that might be filed, of possible defenses that might be asserted either prior to or at trial, of the sentencing factors set forth in 18 U.S.C. § 3553(a), of relevant Sentencing Guidelines provisions, and of the consequences of entering into this agreement. I have specifically reviewed and analyzed the materials produced by the USAO which led to its decision to suppress the wiretaps in this case. I have reviewed those materials with my client and discussed with him the possible motions that could be filed related to those materials and the USAO's suppression of the wiretaps, of possible defenses that could be raised in connection with those materials and the suppression of the wiretaps, and the challenges that could be raised to the remaining evidence in the case. To my knowledge: no promises, inducements, or representations of any kind have been made to my client other than those contained in this agreement; no one has threatened or forced my client in any way to enter into this agreement; my client's decision to enter into this agreement is an informed and voluntary one; and the factual basis set forth in this agreement is sufficient to support my client's entry of a guilty plea pursuant to this agreement.

2/16/15

EDWARD ROBINSON, ESQ.                                    Date
Attorney for Defendant
GROVER HENRY COLIN NIX, IV

17

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# EXHIBIT A – DRAFT INFORMATION

1

2

3

4

5

6

7

8

9

10                    UNITED STATES DISTRICT COURT

11              FOR THE CENTRAL DISTRICT OF CALIFORNIA

12   UNITED STATES OF AMERICA,           CR No. 13-48(B)-SVW

13            Plaintiff,                 S U P E R S E D I N G
                                         I N F O R M A T I O N
14            v.
                                         [18 U.S.C. § 371: Conspiracy]
15   GROVER HENRY COLIN NIX, IV,
        aka "Colin Nix,"                 **DRAFT**
16
              Defendant.
17

18

19

20

21                      **[DRAFT INFORMATION]**

22

23

24

25

26

27

28

1    The Acting United States Attorney charges:

2                    [18 U.S.C. § 371]

3  A.   INTRODUCTORY ALLEGATIONS

4        1.   At all times relevant to this Superseding Information:

5             a.   Defendant GROVER HENRY COLIN NIX, IV, also known as

6  "Colin Nix" ("defendant NIX"), resided in Los Angeles, California.

7  Defendant NIX controlled, among other companies and entities,

8  Calbridge Capital, LLC ("Calbridge Capital") along with his co-

9  conspirator Regis Possino ("Possino"), which purported to be a

10  "boutique investment banking firm" with offices in Santa Monica,

11  California.

12            b.   Possino resided in Pacific Palisades, California, and

13  operated Calbridge Capital with defendant NIX.

14            c.   Defendant NIX and Possino owned and controlled

15  various entities, including but not limited to SLC Air, Inc. ("SLC

16  Air"); Trilogy Expedition, Inc. ("Trilogy Expedition"); Wellington

17  Manor Holdings, Inc. ("Wellington Manor"); October Funds, Ltd.

18  ("October Funds"); Rancho Malibu, Inc. ("Rancho Malibu"); and Black

19  Napkin, Inc. ("Black Napkin").

20            d.   Co-conspirator Ivano Angelastri ("Angelastri")

21  resided in Switzerland and Dubai.  Angelastri was an investment

22  manager who controlled Ebony Finance, Ltd. ("Ebony Finance"), Sula

23  International, Ltd. ("Sula"), Serendipity Private Equity

24  ("Serendipity"), and Steinhov Private Equity ("Steinhov").

25  Angelastri controlled funds and securities in foreign accounts for

26  himself and another co-conspirator, Tarun Mendiratta ("Mendiratta"),

27  including brokerage and bank accounts in Switzerland and bank

28  accounts in Liechtenstein.

                              20

1         e.   Co-conspirator Mendiratta resided in Weston,

2  Connecticut.  Mendiratta controlled Interstellar Holdings, LLC

3  ("Interstellar Holdings") and Fox and Hound 1901, LLC ("Fox and

4  Hound").

5         f.   Co-conspirator Edon Moyal ("Moyal") resided in

6  Carlsbad, California.

7         g.   Co-conspirator Mark Harris ("Harris") resided in

8  Scottsdale, Arizona.  Harris was a stock promoter who controlled

9  Apache Capital, LLC ("Apache Capital"), which was an investor

10  relations firm with offices in Scottsdale, Arizona.

11         h.   Co-conspirator Joseph Scarpello ("Scarpello") resided

12  in Tustin, California.  Scarpello was a disbarred attorney who

13  controlled Club Consultants, Inc. ("Club Consultants").

14         i.   Unindicted Co-Conspirator 1 resided in Salt Lake

15  City, Utah, and was the CEO of Sport Endurance, Inc. until in or

16  about mid-December 2010.

17         j.   Sport Endurance, Inc. ("Sport Endurance") was a

18  Nevada corporation with offices in Salt Lake City, Utah.  Sport

19  Endurance purported to develop, manufacture, and distribute energy

20  drinks and nutritional supplements.  Sport Endurance stock was

21  quoted on the Over-The-Counter Bulletin Board ("OTCBB") under the

22  ticker symbol "SENZ" and began trading on or about June 16, 2010.

23  B.   THE OBJECTS OF THE CONSPIRACY

24      2.   Beginning on a date unknown to the Acting United States

25  Attorney, but at least as early as in or about June 2009, and

26  continuing through at least in or about December 2010, in Los

27  Angeles County, within the Central District of California, and

28  elsewhere, defendant NIX, together with Possino, Mendiratta,

1 Angelastri, Moyal, Harris, and Scarpello, and others known and
2 unknown to the Acting United States Attorney, knowingly combined,
3 conspired, and agreed to commit securities fraud, in violation of
4 Title 15, United States Code, Sections 78j(b) and 78ff(a), and Title
5 17, Code of Federal Regulations, Section 240.10b-5, by fraudulently
6 manipulating the price and volume of Sport Endurance stock.

7 C.    THE MANNER AND MEANS OF THE CONSPIRACY

8      3.    The object of the conspiracy was carried out, and to be
9 carried out, in substance, as follows:

10          a.    Defendant NIX, together with Possino and Moyal,
11 identified Sport Endurance as a company that could be used to carry
12 out a manipulation campaign.  Defendant NIX, together with Possino,
13 Moyal, Scarpello, and Unindicted Co-Conspirator 1, took steps to
14 obtain secret control over all, or a substantial portion, of Sport
15 Endurance's free trading shares.

16          b.    Defendant NIX, together with Possino and Scarpello,
17 and others known and unknown to the Acting United States Attorney,
18 took steps to conceal their ownership of Sport Endurance stock by,
19 among other things:

20               1.    Transferring shares to nominee entities and
21 individuals that they controlled, including but not limited to
22 Calbridge Capital, SLC Air, Trilogy Expedition, October Funds, and
23 Club Consultants;

24               2.    Transferring shares to nominee entities and
25 individuals who were controlled by other conspirators, including but
26 not limited to Mendiratta and Angelastri, as compensation for those
27 conspirators' participation in the conspiracy; and

28

1    3.    Transferring shares to accounts in Switzerland

2 that Angelastri maintained on Mendiratta's behalf, in order to:

3              i.    Further conceal Mendiratta's control of the

4 shares; and

5              ii.   Frustrate and obstruct law enforcement's

6 efforts to trace and seize any proceeds from the fraudulent sale of

7 those shares.

8         c.    After obtaining secret control of Sport Endurance's

9 free trading shares, defendant NIX, together with Possino,

10 Mendiratta, Angelastri, and Harris, and others known and unknown to

11 the Acting United States Attorney, used the following methods, among

12 others, to generate interest in Sport Endurance and fraudulently

13 inflate the price and trading volume of Sport Endurance's shares:

14         1.    Defendant NIX, together with Possino,

15 Mendiratta, Angelastri, and others known and unknown to the Acting

16 United States Attorney, bought shares of Sport Endurance on the open

17 market shortly before the promotion campaigns were launched.  To the

18 investing public, these trades appeared to be purchases by investors

19 not affiliated with the companies, and gave the false appearance

20 that there was an increasing market demand for Sport Endurance's

21 shares.

22         2.    Defendant NIX, along with Possino, Mendiratta,

23 and Angelastri, secretly cross traded Sport Endurance's shares back

24 and forth between accounts that they controlled, in order to create

25 the false appearance that there was an active market for the Sport

26 Endurance's shares so that, among other things, the investing public

27 would take interest in the company and purchase the shares.

28

1          3.    Defendant NIX, together with Possino,

2 Mendiratta, Angelastri, and Harris, and others known and unknown to

3 the Acting United States Attorney, fraudulently promoted Sport

4 Endurance stock through the following means, among others:

5          i.    Paying stock promoters, including Harris,

6 to tout Sport Endurance's performance and prospects, including

7 through mass emails and mailings, Internet advertisements, and other

8 media outlets;

9          ii.    Giving, and offering to give, Mendiratta

10 and Angelastri, as well as others known and unknown to the United

11 States, shares of Sport Endurance, or a portion of the profits from

12 the manipulation campaign for that company, in exchange for funding

13 the promotion campaign for Sport Endurance; and

14          iii.    Paying stock analysts and recommendation

15 websites, many of which purported to offer independent and unbiased

16 analyses of various stocks, to recommend Sport Endurance as a

17 favorable investment.  Defendant NIX, along with Possino and

18 Mendiratta, took steps to conceal from the public that they were the

19 source of the funds paid to these stock analysts and recommendation

20 websites.

21         d.    Defendant NIX, along with Possino, Mendiratta, and

22 others known and unknown to the Acting United States Attorney,

23 worked with management at Sport Endurance, including Unindicted Co-

24 Conspirator 1, to issue press releases from Sport Endurance that

25 defendant NIX, as well as Possino, Mendiratta, and Angelastri, knew

26 contained materially false and misleading information, and omitted

27 material information necessary to make the press releases not false

28 and misleading, regarding:

1        1.    Sport Endurance's business operations, products
2    that it had supposedly developed or was developing, hiring of new
3    employees, projected earnings, and growth potential;

4        2.    Defendant NIX and his co-conspirators'
5    ownership and control, through various nominees, of a substantial
6    portion of the free trading shares of Sport Endurance stock;

7        3.    Defendant NIX and his co-conspirators' payments
8    to promoters to tout Sport Endurance stock;

9        4.    Defendant NIX and his co-conspirators'
10   artificial manipulation of the price and trading volume of Sport
11   Endurance stock;

12       5.    Defendant NIX and his co-conspirators'
13   intention to sell their shares of Sport Endurance stock at the same
14   time that they were paying promoters to encourage the investing
15   public to buy and hold shares of Sport Endurance stock.

16       e.    After fraudulently inflating the price of Sport
17   Endurance stock, defendant NIX, together with Possino, Mendiratta,
18   Angelastri, Scarpello, and others known and unknown to the Acting
19   United States Attorney, used the means and instrumentalities of
20   interstate commerce, and the facilities of a national securities
21   exchange, to sell their shares of Sport Endurance to unsuspecting
22   victim investors at the fraudulently inflated prices, thereby
23   generating substantial illegal profits.

24       f.    Defendant NIX and his co-conspirators generated more
25   than $1,000,000 in illegal proceeds from selling their shares of
26   Sport Endurance stock at the fraudulently inflated prices.

27

28

25

1  D.    OVERT ACTS

2       4.    In furtherance of the conspiracy and to accomplish its
3  object, defendant NIX, together with Possino, Mendiratta,
4  Angelastri, Harris, Scarpello, and others known and unknown to the
5  Acting United States Attorney, committed, willfully caused others to
6  commit, and aided and abetted the commission of the following overt
7  acts, among others, in the Central District of California and
8  elsewhere:

9       Overt Act 1: On or about August 4, 2010, Mendiratta told an
10 anticipated participant in the conspiracy ("Person A") that
11 Mendiratta had six million shares of Sport Endurance stock.
12 Mendiratta offered Person A half of those shares if Person A would
13 fund a portion of the promotion campaign to tout the company as a
14 favorable investment.

15      Overt Act 2: On or about August 4, 2010, Mendiratta told Person
16 A that (a) Mendiratta was using twelve different promoters to tout
17 Sport Endurance stock; and (b) Angelastri had wired the money to the
18 promoters to pay them.

19      Overt Act 3: On or about August 5, 2010, Angelastri caused an
20 international wire transfer of approximately $29,968.29 from an
21 account in Liechtenstein to Stock Promotion Group, LLC for the
22 purpose of promoting Sport Endurance stock.

23      Overt Act 4: On or about August 5, 2010, Angelastri cross
24 traded 10,000 shares of Sport Endurance from an account that he
25 controlled at UBS AG Zurich Investment Bank in Switzerland, to
26 another account that he controlled at Aargauische Kantonal Bank in
27 Switzerland.

28

26

Overt Act 5: On or about August 9, 2010, Unindicted Co-Conspirator 1 caused the dissemination of a press release announcing that Sport Endurance had hired a national sales force and projecting that the company's gross sales through 2011 would exceed $7.5 million.

Overt Act 6: On or about August 11, 2010, Angelastri cross traded 15,000 shares of Sport Endurance from an account that he controlled at UBS AG Zurich Investment Bank in Switzerland, to another account that he controlled at Aargauische Kantonal Bank in Switzerland.

Overt Act 7: On or about August 11, 2010, Mendiratta told Person A that Mendiratta and his partners wanted to raise the price of Sport Endurance stock, which at that time was trading at approximately 38 cents per share, to over 50 cents per share on the first day of the promotion campaign and to over 70 cents per share by the end of the third day of the campaign.

Overt Act 8: Between on or about August 11, 2010, and on or about August 17, 2010, Mendiratta and Angelastri caused multiple stock promotion websites to tout Sport Endurance as a favorable investment.

Overt Act 9: On or about August 12, 2010, defendant NIX and Possino caused a stock analyst to issue a report recommending Sport Endurance as an attractive investment, with a target price for the company's stock that was 450 percent higher than its then-current market price.

Overt Act 10: On or about August 16, 2010, Unindicted Co-Conspirator 1 caused the dissemination of a press release announcing that Sport Endurance had developed a "revolutionary" formula that

1  allowed for safer consumption of Creatine, a muscle-building dietary
2  supplement.

3      Overt Act 11: Between on or about August 11, 2010, and on or
4  about August 30, 2010, Menditatta, using a brokerage account in the
5  name of Interstellar Holdings, sold approximately 500,000 shares of
6  Sport Endurance.

7      Overt Act 12: Between on or about August 11, 2010, and on or
8  about August 24, 2010, defendant NIX and Possino, using a brokerage
9  account in the name of October Funds, sold approximately 393,000
10  shares of Sport Endurance.

11      Overt Act 13: Between on or about August 11, 2010, and on or
12  about August 24, 2010, Scarpello sold approximately 65,000 shares of
13  Sport Endurance.

14      Overt Act 14: Between on or about August 12, 2010, and on or
15  about August 13, 2010, Angelastri, using brokerage accounts located
16  in Switzerland, sold approximately 475,000 shares of Sport
17  Endurance.

18      Overt Act 15: On or about September 2, 2010, defendant NIX told
19  Person A that defendant NIX, Possino, and their partners controlled
20  "every single share" of Sport Endurance.

21      Overt Act 16: On or about September 2, 2010, Possino told
22  defendant NIX, Angelastri, and Person A that (a) Possino expected
23  that they would receive a return between three to six times the
24  amount that they would pay promoters to tout Sport Endurance;
25  (b) Possino spoke with Unindicted Co-Conspirator 1 "every day"; and
26  (c) Unindicted Co-Conspirator 1 was "on the same page" with what
27  Possino and his partners were doing with Sport Endurance's stock.
28

Overt Act 17: On or about September 8, 2010, Angelastri
informed Person A about the progress of the manipulation campaign,
stating that Possino needed to make "a real story out of the
company" so there can be "much more buying [of the stock] behind
it."

Overt Act 18: On or about October 12, 2010, defendant NIX and
Possino told Person A that they controlled approximately 14 million
shares of Sport Endurance through Calbridge Capital and other
nominee entities.  Possino also told Person A that they had split up
blocks of shares among different entities "to make sure that we
didn't go over a certain percentage."

Overt Act 19: On or about October 12, 2010, Scarpello described
to Person A how shares of Sport Endurance had been transferred among
different entities that were controlled by defendant NIX and
Possino.

Overt Act 20: On or about October 14, 2010, Angelastri caused
an international wire transfer of approximately $99,972.65 from an
account in Liechtenstein to Harris for the purpose of promoting
Sport Endurance.

Overt Act 21: On or about October 19, 2010, Unindicted Co-
Conspirator 1 caused the dissemination of a press release announcing
that Sport Endurance projected revenues of (a) more than $1 million
for the fourth quarter of 2010; (b) more than $7.4 million in 2011;
and (c) more than $38.7 million by 2013.

Overt Act 22: On or about October 21, 2010, Unindicted Co-
Conspirator 1 caused the dissemination of a press release announcing
that (a) Sport Endurance had three gel cap products that were being

1  distributed across the country; and (b) the company had started

2  development of a new weight loss gel cap product.

3       Overt Act 23: On or about October 26, 2010, Angelastri caused

4  an international wire transfer of approximately $99,972.79 from an

5  account in Liechtenstein to Harris for the purpose of promoting

6  Sport Endurance.

7       Overt Act 24: Between on or about October 14, 2010, and on or

8  about November 9, 2010, Mendiratta, using a brokerage account in the

9  name of Interstellar Holdings, sold approximately 330,000 shares of

10 Sport Endurance.

11      Overt Act 25: Between on or about October 20, 2010, and on or

12 about October 22, 2010, Scarpello sold approximately 130,000 shares

13 of Sport Endurance.

14      Overt Act 26: Between on or about October 20, 2010, and on or

15 about November 2, 2010, defendant NIX and Possino, using brokerage

16 accounts in the name of Trilogy Expedition, sold approximately 5

17 million shares of Sport Endurance.

18      Overt Act 27: Between on or about November 2, 2010, and on or

19 about November 3, 2010, defendant NIX and Possino, using brokerage

20 accounts in the name of SLC Air, sold approximately 5 million shares

21 of Sport Endurance.

22      Overt Act 28: Between on or about November 3, 2010, and on or

23 about November 15, 2010, defendant NIX and Possino, using brokerage

24 accounts in the name of Calbridge Capital, sold approximately 1.2

25 million shares of Sport Endurance.

26      Overt Act 29: On or about November 5, 2010, Possino told Person

27 A that Possino and his partners had recently completed a "campaign"

28

1   to promote Sport Endurance, which had cost them "a hundred thousand
2   a week for a couple of weeks."
3       Overt Act 30: On or about November 5, 2010, Possino disclosed
4   to Person A that the conspirators needed to give the then-current
5   CEO of Sport Endurance a buyout fee of approximately $200,000 to
6   "get him happy and let him move on down the road."

7                           UNITED STATES ATTORNEY'S OFFICE FOR
8                           THE CENTRAL DISTRICT OF CALIFORNIA:

9                           STEPHANIE YONEKURA
                            Acting United States Attorney
10

11
12                          ROBERT E. DUGDALE
                            Assistant United States Attorney
                            Chief, Criminal Division
13
14                          RICHARD E. ROBINSON
                            Assistant United States Attorney
                            Chief, Major Frauds Section
15
16                          JAMES A. BOWMAN
                            Assistant United States Attorney
                            Deputy Chief, Major Frauds Section
17
18                          CHRISTOPHER K. PELHAM
                            Assistant United States Attorney
                            Major Frauds Section
19

20

21

22

23

24

25

26

27

28

                              31

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# EXHIBIT B – FACTUAL STATEMENT

**EXHIBIT B – FACTUAL STATEMENT OF DEFENDANT GROVER HENRY COLIN NIX IV**

1.    Defendant Grover Henry Colin Nix, IV ("defendant")
controlled, among other companies and entities, Calbridge Capital,
LLC ("Calbridge Capital") along with his co-conspirator Regis
Possino ("Possino"), which purported to be a "boutique investment
banking firm" with offices in Santa Monica, California.

2.    Defendant and Possino owned and controlled various
entities, including but not limited to SLC Air, Inc. ("SLC Air");
Trilogy Expedition, Inc. ("Trilogy Expedition"); Wellington Manor
Holdings, Inc. ("Wellington Manor"); October Funds, Ltd. ("October
Funds"); Rancho Malibu, Inc. ("Rancho Malibu"); and Black Napkin,
Inc. ("Black Napkin").

3.    Co-conspirator Ivano Angelastri ("Angelastri") resided in
Switzerland and Dubai.  Angelastri was an investment manager who
controlled Ebony Finance, Ltd. ("Ebony Finance"), Sula
International, Ltd. ("Sula"), Serendipity Private Equity
("Serendipity"), and Steinhov Private Equity ("Steinhov").
Angelastri controlled funds and securities in foreign accounts for
himself and another co-conspirator, Tarun Mendiratta ("Mendiratta"),
including brokerage and bank accounts in Switzerland and bank
accounts in Liechtenstein.  Mendiratta also controlled Interstellar
Holdings, LLC ("Interstellar Holdings") and Fox and Hound 1901, LLC
("Fox and Hound").

4.    Co-conspirator Mark Harris ("Harris") was a stock promoter
who controlled Apache Capital, LLC ("Apache Capital"), which was an
investor relations firm with offices in Scottsdale, Arizona.

1     5.    Co-conspirator Joseph Scarpello ("Scarpello") was a
2 disbarred attorney who controlled Club Consultants, Inc. ("Club
3 Consultants").

4     6.    Unindicted Co-Conspirator 1 was the CEO of Sport
5 Endurance, Inc. until in or about mid-December 2010.

6     7.    Sport Endurance, Inc. ("Sport Endurance") was a Nevada
7 corporation with offices in Salt Lake City, Utah.  Sport Endurance
8 purported to develop, manufacture, and distribute energy drinks and
9 nutritional supplements.  Sport Endurance stock was quoted on the
10 Over-The-Counter Bulletin Board ("OTCBB") under the ticker symbol
11 "SENZ" and began trading on or about June 16, 2010.

12    8.    Starting in at least June 2009, and continuing through
13 December 2010, defendant, together with Possino, Mendiratta,
14 Angelastri, Moyal, Harris, and Scarpello, and others, knowingly
15 combined, conspired, and agreed to illegally profit from
16 fraudulently manipulating the price and volume of Sport Endurance
17 stock.

18    9.    The conspiracy was carried out as follows:

19         a.    Defendant, together with Possino and Moyal,
20 identified Sport Endurance as a company that could be used to carry
21 out a manipulation campaign.  Defendant, together with Possino,
22 Moyal, Scarpello, and Unindicted Co-Conspirator 1, took steps to
23 obtain secret control over all, or a substantial portion, of Sport
24 Endurance's free trading shares.

25         b.    Defendant, together with Possino and Scarpello, and
26 others, took steps to conceal their ownership of Sport Endurance
27 stock by, among other things:

28

34

1            1.   Transferring shares to nominee entities and

2   individuals that they controlled, including but not limited to

3   Calbridge Capital, SLC Air, Trilogy Expedition, October Funds, and

4   Club Consultants;

5            2.   Transferring shares to nominee entities and

6   individuals who were controlled by other conspirators, including but

7   not limited to Mendiratta and Angelastri, as compensation for those

8   conspirators' participation in the conspiracy; and

9            3.   Transferring shares to accounts in Switzerland

10  that Angelastri maintained on Mendiratta's behalf, in order to:

11           i.   Further conceal Mendiratta's control of the

12  shares; and

13           ii.   Frustrate and obstruct law enforcement's

14  efforts to trace and seize any proceeds from the fraudulent sale of

15  those shares.

16        c.   After obtaining secret control of Sport Endurance's

17  free trading shares, defendant, together with Possino, Mendiratta,

18  Angelastri, and Harris, and others, used the following methods,

19  among others, to generate interest in Sport Endurance and

20  fraudulently inflate the price and trading volume of Sport

21  Endurance's shares:

22           1.   Defendant, together with Possino, Mendiratta,

23  Angelastri, and others, bought shares of Sport Endurance on the open

24  market shortly before the promotion campaigns were launched.  To the

25  investing public, these trades appeared to be purchases by investors

26  not affiliated with the companies, and gave the false appearance

27  that there was an increasing market demand for Sport Endurance's

28  shares.

1    2.   Defendant, along with Possino, Mendiratta, and
2   Angelastri, secretly cross traded Sport Endurance's shares back and
3   forth between accounts that they controlled, in order to create the
4   false appearance that there was an active market for the Sport
5   Endurance's shares so that, among other things, the investing public
6   would take interest in the company and purchase the shares.

7    3.   Defendant, together with Possino, Mendiratta,
8   Angelastri, and Harris, and others, fraudulently promoted Sport
9   Endurance stock through the following means, among others:

10    i.   Paying stock promoters, including Harris,
11   to tout Sport Endurance's performance and prospects, including
12   through mass emails and mailings, Internet advertisements, and other
13   media outlets;

14    ii.   Giving, and offering to give, Mendiratta
15   and Angelastri, shares of Sport Endurance, or a portion of the
16   profits from the manipulation campaign for that company, in exchange
17   for funding the promotion campaign for Sport Endurance; and

18    iii.   Paying stock analysts and recommendation
19   websites, many of which purported to offer independent and unbiased
20   analyses of various stocks, to recommend Sport Endurance as a
21   favorable investment.  Defendants, along with Possino and
22   Mendiratta, took steps to conceal from the public that they were the
23   source of the funds paid to these stock analysts and recommendation
24   websites.

25    d.   Defendant, along with Possino, Mendiratta, and
26   others, worked with management at Sport Endurance, including
27   Unindicted Co-Conspirator 1, to issue press releases from Sport
28   Endurance that defendant, as well as Possino, Mendiratta, and

36

Angelastri, knew contained materially false and misleading information, and omitted material information necessary to make the press releases not false and misleading, regarding:

     1. Sport Endurance's business operations, products that it had supposedly developed or was developing, hiring of new employees, projected earnings, and growth potential;

     2. Defendant and his co-conspirators' ownership and control, through various nominees, of a substantial portion of the free trading shares of Sport Endurance stock;

     3. Defendant and his co-conspirators' payments to promoters to tout Sport Endurance stock;

     4. Defendant and his co-conspirators' artificial manipulation of the price and trading volume of Sport Endurance stock;

     5. Defendant and his co-conspirators' intention to sell their shares of Sport Endurance stock at the same time that they were paying promoters to encourage the investing public to buy and hold shares of Sport Endurance stock.

     f. After fraudulently inflating the price of Sport Endurance stock, defendant, together with Possino, Mendiratta, Angelastri, Scarpello, and others, used the means and instrumentalities of interstate commerce, and the facilities of a national securities exchange, to sell their shares of Sport Endurance to unsuspecting victim investors at the fraudulently inflated prices, thereby generating substantial illegal profits.

     g. Defendant and his co-conspirators generated more than $1 million in illegal proceeds from selling their shares of Sport Endurance stock at the fraudulently inflated prices.

CERTIFICATE OF SERVICE

I, ALEJANDRA SOTO, declare:

That I am a citizen of the United States and resident or employed in Los Angeles County, California; that my business address is the Office of United States Attorney, United States Courthouse, 312 North Spring Street, Los Angeles, California 90012; that I am over the age of eighteen years, and am not a party to the above-entitled action;

That I am employed by the United States Attorney for the Central District of California who is a member of the Bar of the United States District Court for the Central District of California, at whose direction I served a copy:

PLEA AGREEMENT FOR DEFENDANT GROVER HENRY COLIN NIX, IV

service was:

[] Placed in a closed envelope, for collection and interoffice delivery addressed as follows:

[✓] Placed in a sealed envelope for collection and mailing via United States Mail addressed as follows:

[] By hand delivery addressed as follows:

[] By facsimile as follows:

[] By e-mail as follows:

[] By federal express as follows:

**Edward Robinson
21515 Hawthorne Blvd., #665
Torrance, CA 90503**

This Certificate is executed on February 18, 2015, at Los Angeles, California.

I certify under penalty of perjury that the foregoing is true and correct.

_____
ALEJANDRA SOTO